

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| vs. | : | |
| ROBERT WILLIAMS | : | NO. 08-201-4 |

FILED
JUN 2 2009
MICHAEL [illegible], Clerk
By_____Dep. Clerk

## MEMORANDUM

**Gene E.K. Pratter, J.**                                                **JUNE 2, 2009**

Robert Williams, along with co-defendant Dennis Burnett, has been charged[1] with conspiring to commit Hobbs Act robberies in violation of 18 U.S.C. § 1951 (a), (b)(1) and (b)(3), with aiding and abetting and commission of a Hobbs Act robbery in violation of 18 U.S.C. § 1951 (a) and (b)(1) and with knowingly using and carrying (and aiding and abetting the use and carrying) of a firearm during and in relation to a crime of violence in violation of 18 U.S.C § 924 (c) and 2. If convicted of the latter charge, Mr. Williams faces a mandatory minimum of ten years imprisonment, up to life imprisonment.

The charges as to Mr. Williams arise from a January 13, 2008 mid-morning robbery of a Rite-Aid Pharmacy at 4018 Woodhaven Road in Philadelphia, during which three robbers, allegedly including Mr. Williams, brandished weapons (including a shot gun that was discharged, a hand gun and a knife), handcuffed and confined store employees and customers, and stole almost $9,000 worth of narcotics.

---

[1] The Grand Jury issued the now extant Third Superceding Indictment on May 12, 2009, succeeding the December 16, 2008 Second Superceding Indictment. Other co-conspirators have been charged elsewhere.

Mr. Williams, having been initially detained by a magistrate judge in the District of Maryland and then transferred to this District where his guilty plea has been entered and his detention ordered on March 6, 2009, has been held without bail since his February 2009 arrest. Mr. Williams now moves for pre-trial release on conditions, pursuant to 18 U.S.C. § 3142 (g), a motion that the Government opposes. Both Mr. Williams and the Government acknowledge that pursuant to 18 U.S.C. § 3142(e), a rebuttable presumption of detention applies. Mr. Williams emphasizes that "[i]n our society liberty is the norm, and detention prior to trial...is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). The Government counters that this case, with the allegation of Mr. Williams's commission of a violent crime, the quantity and quality of the evidence against him and the apparent flight by Mr. Williams from the jurisdiction after the robbery, presents just such an exception.

The Court held a hearing de novo on May 29, 2009 to consider Mr. Williams's motion at which both Mr. Williams and the Government had the opportunity to present evidence, including in the nature of an offer of proof, and oral argument to supplement their respective written submissions. The issues for the Court's resolution are whether, in light of the presumption, the Court can have sufficient confidence that specific conditions could be configured to reasonably assure Mr. Williams's appearance at trial and to reasonably assure the safety of other persons as required by Section 3142 (d) of the Bail Reform Act of 1984.

At the hearing, Mr. Williams presented two witnesses, his brother Jermaine Young, and his mother Susan Young. The witnesses presented options for alternate living arrangements pursuant to which Mr. Williams would be in his relatives' custody, in Maryland if with his brother, or in Morrisville, Bucks County, if with his mother. Both Mr. Young and Ms. Young

presented themselves as conscientious, law-abiding citizens who would intend in good faith to live up to their custodial obligations if Mr. Williams was released into their custody. Both say they would be able and willing to configure their home phones to accommodate electronic monitoring of Mr. Williams if so ordered by the Court. Mr. Young also testified that he would arrange to have Mr. Williams work in a restaurant that Mr. Young operates in Maryland, a restaurant where Mr. Williams previously assisted Mr. Young. Mr. Young, who works in Washington, D.C., has two young sons who spend each weekend at his home and whose safety the Court considers important to preserve. It appears that Mr. Williams's fianceé, who had lived with Mr. Williams in Philadelphia at the time of the robbery Mr. Williams is charged with committing, now lives in Maryland. It appears that Mr. Young and Ms. Young both have appropriate familial relationships with Mr. Williams, although neither could be said to have exercised direct influence, much less control, over Mr. Williams for any number of years. Neither of them is familiar with Mr. Williams's friends or associates, at least those who have been implicated in the crimes at issue here. In addition, Ms. Young directly acknowledges that while she has rules for her home, she has no knowledge of what her son did when he was away from home. She also demonstrated an apparent lack of complete appreciation as to the serious nature of the charges her son faces. Indeed, she professed to be rather unaware of even the news reports of any robbery in her own town at issue in this case.

The Government acknowledges that Mr. Williams has no prior criminal record and that he honorably served in the armed forces, having been discharged in 2004. However, the Government argues that this benign background information, even when supplemented by the uncontroverted expressions of Mr. Williams's relatives' willingness to have him live with them subject to

electronic monitoring, neither amounts to a meaningful change in circumstances since the prior detention hearings nor rebuts the presumption of detention. The Court is constrained to agree with the Government.

The analysis of Mr. Williams's motion must start with a dispassionate consideration of the crimes charged and the efficacy of the evidence linking Mr. Williams to them. Here, even without consideration of the conspiracy charges, Mr. Williams will be standing trial for a brazen mid-morning robbery of a neighborhood pharmacy with cohorts, all of whom brandished dangerous weapons (one of which discharged pellets that injured a victim in the store) while terrorizing store employees and customers before making off with approximately $9,000 of narcotics. The Government suggests that in addition to testimony of three co-operating witnesses who will directly tie Mr. Williams to the planning and execution of the January 13, 2008 Rite Aid Pharmacy robbery, "civilian" witnesses will also implicate Mr. Williams. The Government also has evidence that tracks the use of the cell phone registered to Mr. Williams immediately prior to the day of the robbery in and around locations frequented by his alleged co-conspirators and then immediately before the robbery, in "close proximity to the Rite Aid Pharmacy which was robbed." The Government also highlights that Mr. Williams fled this jurisdiction with co-conspirator Dennis Burnett after the robbery and was documented by law enforcement to be in North Carolina driving a car registered to a person also implicated in preparations for the robberies. Finally, the Government observes that these events allegedly occurred while Mr. Williams was subject to the influences of his fianceé, his brother and, arguably, his mother who are being touted as appropriate custodians of and influences upon Mr. Williams now if he is released on bail.

In summary, given the nature of the crimes at issue and the grave severity of the

punishment if Mr. Williams is convicted of those crimes, the Court has insufficient confidence that any proposed non-detention living arrangement for Mr. Williams, even with electronic monitoring, would reasonably assure either Mr. Williams's appearance at trial or the safety of the general community or the interests of Mr. Williams's family members.

An Order consistent with this Memorandum follows.

BY THE COURT:

Gene E.K. Pratter
*United States District Judge*